**Daniel Snyder, OSB No. 78385**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 06105**
carlpost@lawofficeofdanielsnyder.com
**John David Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
        Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ANGIE TOMLINSON,**<br><br>Plaintiff**,**<br><br>v.<br><br>**CITY OF PORTLAND,**<br><br>Defendant. | Case No. 3:23-cv-188<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>UNLAWFUL EMPLOYMENT ACTIONS FMLA; ADA; TITLE VII, ADEA, and Supplemental State Law Claims |

## PRELIMINARY STATEMENT

1.      This is an action for damages, including compensatory damages, equitable relief, including injunctive and declaratory relief, attorneys' fees, costs, and interest.

2.      In this action, Plaintiff Angie Tomlinson brings claims against Defendant City of Portland, Oregon for violations of Title I of the Americans with Disabilities Act (ADA),

PAGE 1 – COMPLAINT AND DEMAND FOR JURY TRIAL

42 U.S.C. § 12112, the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., as well as supplementary state claims ORS 659A.112, ORS 659A.150, et seq. (OFLA), and ORS 659A.030. As alleged herein, the City discriminated and retaliated against Plaintiff because of her disability, age, race, and for taking protected medical leave. Further, the City failed to engage in the interactive process or provide reasonable accommodations. The City also interfered with Plaintiff's use of medical leave. Plaintiff seeks equitable relief as well as economic and non-economic damages, attorneys' fees, and costs.

**JURISDICTION**

3.      This Court has subject matter jurisdiction of this lawsuit under both 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

4.      Venue is proper in the Portland Division of the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District because a substantial part of the events giving rise to the claims occurred in Multnomah County which is in the Portland Division.

5.      Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

6.      To the extent applicable to any claims alleged herein, Plaintiff complied with the Oregon Tort Claims Act. On October 20, 2021, Defendant through Rosalia Radich, Senior Claims Analyst, Bureau of Revenue and Financial Services, acknowledged receipt of Plaintiff's Notice of Tort Claim making a claim against the City of Portland which was sent by first-class and certified mail to the City of Portland Bureau of Risk Management. On December 14, 2021,

PAGE 2 – COMPLAINT AND DEMAND FOR JURY TRIAL

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Plaintiff through counsel mailed a supplemental tort claim notice to Rosalia Radich, Senior Claims Analyst.

7.      All preconditions to jurisdiction pursuant to 42 U.S.C. §2000e-5 have been satisfied.

      a.      On December 22, 2021, Plaintiff filed a complaint of employment discrimination and retaliation with the Oregon Bureau of Labor and Industries Civil Rights Division (BOLI CRD), case no. EEEMSX211222-12397, for violation of Oregon employment discrimination law including disability discrimination in employment, age, race, gender and disability discrimination in employment, medical leave interference (OFLA), whistleblowing, and other Oregon Unlawful Employment Practices. BOLI CRD acknowledged the complaint as filed on or about December 22, 2021.

      b.      On or about January 7, 2022, BOLI CRD co-filed a charge with the Equal Employment Opportunity Commission (EEOC), charge no. 38D-2022-00159C.

      c.      On November 10, 2022, BOLI CRD issued a right-to-sue letter for case no. EEEMSX211222-12397.

      d.      On December 9, 2022, the EEOC issued a dismissal and right to sue notice for charge no. 38D-2022-00159C.

### PARTIES

8.      Plaintiff Angie Tomlinson ("Plaintiff") is a citizen of the United States of America. At all times relevant, Plaintiff was a long-time employee of the City, working in Multnomah County, Oregon. Plaintiff is more than 50 years old. Plaintiff is Hispanic of Mexican descent.

PAGE 3 – COMPLAINT AND DEMAND FOR JURY TRIAL

9.      Defendant City of Portland (hereafter "the City") is a political subdivision of the State of Oregon.

## GENERAL FACTUAL ALLEGATIONS

10.      On April 12, 2018, Plaintiff began working for the City of Portland as The Electronic Plan Review Manager for Defendant's Bureau of Development Services (BDS) as a Principal Management Analyst. Her job duties were program management of the implementation of ProjectDox software that included training internal and external users, creating a plan for the first phase of rolling out the software, working directly with the vendor, managing the budget of the program, supervision of the team members, and managing configuration and implementation of the software. As a Principal Management Analyst, she held the third highest position in the Portland Online Permitting (POPS) Division, of BDS.

11.      During Summer 2018, Plaintiff's team, the ePlans team, was an all-female work group.

12.      In December 2018, Defendant held an equity compensation study. After reviewing Plaintiff's job classification and years of experience, the Human Resources Department decided equity in pay meant that Defendant needed to increase Plaintiff's compensation.

13.      In December 2018, instead of raising Plaintiff's compensation, Defendant reclassified plaintiff downward into a Business Systems Analyst 3 (BSA3) classification. That reclassification was incorrect because Plaintiff managed a staff member who was already a BSA3. Furthermore, the BSA3 classification did not include management of budgets which Plaintiff was required to do.

14.      In Spring of 2019, Plaintiff requested reclassification from BSA3 to Supervisor 2,

PAGE 4 – COMPLAINT AND DEMAND FOR JURY TRIAL

which was the same pay scale as BSA3, but with the correct responsibility description. That reclassification was denied.

15.    In May 2019, a newly formed Training Team led by Brenda Fahey, Supervisor 2, Senior Manager, Technology & Continuous Improvement Division at City of Portland assigned an Analyst 2 to help the ePlans team create online training. The analyst that Fahey assigned to Plaintiff s team did not appear to know how to use the software to create online content which is called Captivate or how to use ProjectDox., six months later, in November 2019, no work had been produced by the analyst and the ePlans team was very frustrated.

16.    In November 2019, the relationship between Taylor Barnes and the ePlans team was very strained. Brenda Fahey, the analyst's supervisor, asked for a meeting with the ePlans team. The analyst, Brenda Fahey, Angie Tomlinson, and Doug Morgan, the Division Manager for the Plan Review Division attended the meeting. At that meeting, Brenda Fahey appeared to only want to direct questions and comments to Doug Morgan. At one point Brenda Fahey asked technical questions about the ProjectDox software. Doug Morgan replied, "Brenda, you will need to ask Angie (Tomlinson) that question because that is her team." Fahey continued to ignore Plaintiff.

17.    In November 2019, Program Manager Dan Cote, took protected medical leave. The POPS team was almost at the point of implementation of the permitting software AMANDA, a goal that was worked on for at least three years prior.

18.    In December 2019, Dan Cote returned from medical but was no longer supervising the POPS team. Elshad Hajiyev was temporarily supervisor of the POPS team, and was made the Deputy Director of BDS at that time.

19.    In January 2020, Plaintiff began working with Elshad Hajiyev on trying to hire

PAGE 5 – COMPLAINT AND DEMAND FOR JURY TRIAL

more team members for the Electronic Plan Review (ePlans) team. Plaintiff spent long hours of extra work putting together elaborate descriptions of the BSA 1 and BSA 3 positions that were needed.

20.     In January 2020, Elshad Hajiyev opened up a Division Manager position. Plaintiff was asked to be on the interview panel for the first round of interviews. Plaintiff's supervisor at the time, Duane Whitehurst, was interviewed, along with Brenda Fahey, and Priscilla Limm. Brenda Fahey was not asked to attend a second round of interviews. Duane Whitehurst and Priscilla Limm were.

21.     In early February 2020, the AMANDA software went live. Elshad Hajiyev took much of the credit for the AMANDA launch.

22.     In March 2020, a week after Covid stay-at-home orders started, it was announced that Priscilla Limm was chosen from interviews to become the POPS Division Manager. Under the Covid stay at home orders, BDS employees worked remotely. Although all BDS employees could use ProjectDox software, they needed special access to use AMANDA permitting software. Within a few weeks, Plaintiff's team of three female employees worked in a dedicated manner and created a way for everyone to do their job remotely using ProjectDox software and enabled members of the public to submit all building plans. Plaintiff's team worked sixty-hour weeks the first few months of Covid to get this new way of working implemented, on top of the regular way of using ProjectDox.

23.     In May 2020, Priscilla Limm reassigned Plaintiff to report directly to her. Limm also began working on reclassifying Plaintiff to Supervisor 2.

24.     In July 2020, Priscilla Limm was unexpectedly terminated from employment after accusing Elshad Hajiyev of gender discrimination.

PAGE 6 – COMPLAINT AND DEMAND FOR JURY TRIAL

25.     In August 2020, Elshad Hajiyev appointed Brenda Fahey as the temporary POPS Division Manager. Brenda Fahey did not have a strong background in technology.

26.     In September 2020, Plaintiff told Brenda Fahey, the interim POPS Division Manager, that she had worked many hours of overtime without compensation, because the team is understaffed. Plaintiff told Ms. Fahey know that I would have liked my position to be reclassified into a more appropriate description of Supervisor 2.

27.     In late November 2020, Brenda Fahey told Plaintiff that she was going to open up another Supervisor 2 position reporting directly to her. That position would manage the ePlans team, other BSA 3s, and the GIS team.

28.     In mid-December 2020, Brenda Fahey unexpectedly put Plaintiff on a Performance Improvement Plan (PIP). Fahey told Plaintiff that this PIP would start on January 8, 2021, and go through mid-March 2021. Fahey told Plaintiff that she could not be interviewed for the Supervisor 2 position because I was on a PIP.

29.     Early January 2021, Plaintiff applied, and qualified for the list for Supervisor 2. Plaintiff was not interviewed because of the PIP that Fahey imposed.

30.     In January 2021, Brenda Fahey's appointed position became permanent. The Division was changed from POPS to Technology and Continuous Improvement (TCI).

31.     In February and March 2021, TCI held an interview for the Supervisor 2 position. After conducting all the interviews, Brenda Fahey informed the TCI Division that she could not find a suitable candidate for the open position of Supervisor 2.

32.     The last week of February, two of Plaintiff's team members needed to go out on emergency medical leave. Plaintiff was the sole remaining permanent member of the team.

33.     During February and March 2021, more and more responsibilities were put on the

PAGE 7 – COMPLAINT AND DEMAND FOR JURY TRIAL

ePlans team plate including a major upgrade to the database, responding to multiple needs from users that were creating very large projects, maintaining the database, with multiple calls from customers every day for help. Plaintiff informed Brenda Fahey that Plaintiff was working many hours of uncompensated overtime.

34.      During March 2021, Brenda Fahey met with the Permitting Services and Plan Review teams to put together a spreadsheet setting forth whether the City should continue using the ProjectDox software. Plaintiff and her team were not invited to this meeting.

35.      The PIP ended March 22, 2021. Brenda Fahey provided only good feedback to Plaintiff through the end of the PIP. Fahey told Plaintiff that she had completed the PIP.

36.      In late March 2021, Brenda Fahey relisted the Supervisor 2 position. In early April 2021, Plaintiff applied, and qualified for the list, but did not get interviewed. Fahey hired Lila Pigott to be the new Supervisor 2 over ePlans.

37.      On April 6, 2021, even though the PIP expired on March 22, 2021, Fahey told Plaintiff she would be extending the PIP. For the first time, Fahey claimed that Plaintiff had failed to complete the PIP. When Fahey presented the extended PIP, Plaintiff told her that she could not sign it in good faith.

38.      Fahey had meetings with Senior Leadership including David Kuhnhausen, Permitting Services Division Manager, Doug Morgan, and Elshad Hajiyev about the continued use of the ProjectDox software which Plaintiff and her team were not invited to.

39.      Plaintiff met all goals set for the extended PIP. On May 6, 2021, Brenda Fahey told Plaintiff that the extended PIP was ending, and that Plaintiff would now be moved to a disciplinary track. Fahey asked Plaintiff if she was really sick, or if she just wanted time off from work.

PAGE 8 – COMPLAINT AND DEMAND FOR JURY TRIAL

40.    From May 14 through 17, 2021, the ePlans team of Anna Sposito, Melissa Linehan and Plaintiff, implemented a major upgrade. It required all three team members to work over-time over the weekend. Although Plaintiff worked twenty-seven hours over that weekend, Plaintiff was never offered any sort of compensation or leave for time over that weekend.

41.    On May 17, 2021, Brenda Fahey told Plaintiff that she would be adding another permanent Business Systems Analyst (BSA) 3 to the ePlans team in the beginning of June. The person that Fahey hired had no experience in the software or with the complicated permitting process.

42.    On or about May 20, 2021, just after Plaintiff 9.2 upgrade went live, Brenda Fahey scheduled a 1.5 hour meeting with Keith Hathorne from Human Resources. The subject was listed as Notice of Investigatory Interview. The investigatory interview referenced HRAR 5.01.1. Incompetence, inadequate performance or nonperformance of assigned duties.

43.    On June 2, 2021, Plaintiff took protected medical leave under FMLA/OFLA. Plaintiff was off work until June 23, 2021.

44.    On August 4, 2021, Plaintiff was called into a meeting with Ms. Fahey. During that meeting, Ms. Fahey imposed a five day unpaid disciplinary suspension on Plaintiff. Ms. Fahey imposed this discipline on Plaintiff just before she was scheduled to give an important presentation to approximately twenty stakeholders.

45.    On or about October 13, 2021, Plaintiff's attorney sent a tort claim notice to the City of Portland on her behalf. On October 20, 2021, the City of Portland acknowledged receipt of the tort claim notice.

46.    In early November 2021, a City of Portland manager and a supervisor informed Plaintiff that he that he saw that tort claim notice which was being shared with other managers.

PAGE 9 – COMPLAINT AND DEMAND FOR JURY TRIAL

47.    In November 2021, Plaintiff successfully finished a Burn In Markup project and implemented it in a record amount of time.

48.    On November 22, 2021, Plaintiff received a telephone call from BDS Assistant Director Elshad Hajiyev. Mr. Hajiyev informed Plaintiff that she was being terminated as of that that day. Mr. Hajiyev gave no reason for the termination of her employment.

49.    Plaintiff subsequently received a letter from Respondent's human resources referencing Plaintiff's performance at her August 4, 2021, presentation to stakeholders as the reason for termination.

50.    On December 7, 2021, the City denied Plaintiff's request for medical leave for the period June 2 through June 23, 2021. On December 14, 2021, Plaintiff's attorney mailed a supplemental tort claim notice to Defendant on her behalf.

### FIRST CLAIM FOR RELIEF

### (Title I of the ADA, Count I – Discrimination)

51.    Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

52.    At all times material, the City was an employer for the purpose of, and subject to, the ADA.

53.    Plaintiff has an impairment, which substantially limits one or more major life activities, has a history or record of such impairment, or was regarded by the City as having such impairment.

54.    After Plaintiff disclosed her disability to the City, it began to discriminate against her as alleged above. Said discrimination was based on the City's failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work environment.

55.    The City failed to engage in the interactive process with Plaintiff.

PAGE 10 – COMPLAINT AND DEMAND FOR JURY TRIAL

56.     Plaintiff requested reasonable accommodations from the City.

57.     At all relevant times, Plaintiff was able to perform the essential functions of her position, with or without reasonable accommodation.

58.     The City discharged Plaintiff.

59.     The City's conduct violated 42 U.S.C. § 12112.

60.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

**(Title I of the ADA, Count II – Retaliation)**

61.     Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

62.     The City retaliated against Plaintiff for pursuing her rights in accordance with the ADA. Such actions by the City are in violation of the ADA.

63.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

**SECOND CLAIM FOR RELIEF**

**(Oregon Disability Discrimination - ORS 659A.103 et seq.)**

64.     Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

65.     Plaintiff is a 'disabled person' as defined at ORS 659A.104(1).

66.     The City is an 'employer' as defined at ORS 659A.106.

67.     After Plaintiff disclosed her disability to the City, it began to discriminate against her as alleged above. Said discrimination was based on its failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work environment.

68.     The City failed to engage in the interactive process with Plaintiff.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

69.     Plaintiff could perform the essential functions of her job with the City with or without the reasonable accommodations of allowing her to continue to work.

70.     The City's refusal to provide reasonable accommodations for Plaintiff's known disability constitutes discrimination against her pursuant to ORS 659A.103 et seq.

71.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

## THIRD CLAIM FOR RELIEF

### (FMLA – 29 U.S.C. § 2601 et seq.)

72.     Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

73.     The City is an 'employer' within the meaning of 29 U.S.C. § 2611(4).

74.     The City employed at least 50 employees for each working day during each of 20 or more calendar work weeks during 2019, the year before Plaintiff took leave and in 2020, the year Plaintiff took leave.

75.     At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

76.     At all times relevant, the City employed 50 or more employees with 75 miles of the worksite where Plaintiff performed work for it.

77.     The City employed Plaintiff for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave.

78.     The City employed Plaintiff for more than 12 months prior to Plaintiff taking leave\.

79.     At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

PAGE 12 – COMPLAINT AND DEMAND FOR JURY TRIAL

80.     Plaintiff took medical leave and family leave protected by FMLA during 2020, 2021, and 2022.

81.     At all material times, Plaintiff suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

82.     The City intentionally interfered with Plaintiff for engaging in the protected activity of taking medical and family leave under FMLA.

83.     The City interfered with Plaintiff request for and use of protected medical leave by taking adverse employment actions against her, including, but not limited to, taking away her job duties, transferring her, and trying to make her quit her job.

84.     As a direct and proximate result of the City's interference, Plaintiff has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other expenses, all to her economic damages in an amount to be determined at trial.

85.     The Court should enter an order declaring that the City violated the FMLA.

86.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, she is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

87.     Plaintiff is entitled to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A).

88.     Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs incurred herein.

89.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date of payment.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

## FOURTH CLAIM FOR RELIEF

## (OFLA – ORS 659A.150 et. seq.)

90.     Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

91.     Plaintiff took medical leave protected by the Oregon Family Leave Act (OFLA).

92.     The City employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the years before Plaintiff took leave.

93.     The City employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the year Plaintiff took leave.

94.     Immediately prior to commencing family leave, Plaintiff worked for the City for more than 180 days.

95.     Plaintiff worked an average of more than 25 hours per week for the City during the 180 days immediately preceding the date on which she commenced leave.

96.     At all material times, Plaintiff had a serious health condition as that term is defined in ORS 659A.150(6).

97.     The City interfered, discriminated, and retaliated against Plaintiff for taking family and medical leave by taking adverse employment actions against her, including, but not limited to, taking away her job duties, transferring her, and trying to make her quit her job.

98.     As a result of the City's interference, discrimination, and retaliation against her, Plaintiff suffered and continued to suffer economic losses.

99.     As a result of the City's discrimination and retaliation against her, Plaintiff is entitled to equitable relief and back pay.

100.    The Court should enter an order declaring that the City violated the OFLA.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

101.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, she is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

102.    Pursuant to ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover her reasonable attorneys' fees and costs, including expert witness fees.

103.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## FIFTH CLAIM FOR RELIEF

(ORS Chapter 659A.030 – Oregon Age, Race, and Gender Discrimination)

104.    Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

105.    Plaintiff's discrimination on the basis of age as alleged herein constitutes an unlawful employment practice in the terms and conditions of Plaintiff's employment in violation of ORS 659A.030 and caused Plaintiff economic and non-economic damages.

106.    As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendant:

A.    A sum which will fully compensate Plaintiff for Plaintiff's non-economic damages in a sum that is just as determined by a jury not to exceed $750,000;

B.    A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a sum that is just as determined by a jury not to exceed $500,000;

C.    Equitable relief, including, but not limited to, reinstatement if Plaintiff so chooses;

PAGE 15 – COMPLAINT AND DEMAND FOR JURY TRIAL

D.      Liquidated damages;

E.      Plaintiff's costs and disbursements incurred herein;

Plaintiff's attorneys' fees; and

## DAMAGES FOR PLAINTIFF'S FIRST, SECOND, AND FIFTH
## CLAIMS FOR RELIEF

107.    Plaintiff is entitled to equitable relief, including, but not limited to, a declaration
or order from the Court finding that the City violated her statutory rights, reinstatement, and an
injunction prohibiting further discrimination and retaliation.

108.    Plaintiff is entitled to an award for past lost wages and benefits and future lost
earnings, benefits, and lost earning capacity, and other compensatory damages for past and future
pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair
by a jury.

109.    Plaintiff is entitled to non-economic damages sufficient to compensate her for
emotional distress and other nonpecuniary losses in an amount to be proven at trial. Plaintiff
should be awarded non-economic damages in an amount determined fair by a jury.

110.    To the extent any amount awarded to Plaintiff is for damages occurring prior to
the entry of judgment, she is entitled to an award of pre-judgment interest at the legal rate from
the date the damage occurred until the date of judgment.

111.    Pursuant to 42 U.S.C. § 1988, 42 U.S.C. §2000e-5, ORS 659A.885, ORS 20.107,
Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

112.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and
fees from the date of judgment until the date of payment.

PAGE 16 – COMPLAINT AND DEMAND FOR JURY TRIAL

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendant:

A.    A sum which will fully compensate her for her non-economic damages in a sum that is just as determined by a jury;

B.    A sum which will fully compensate her for her economic damages in a sum that is just as determined by a jury;

C.    Equitable relief, including, but not limited to, reinstatement if she so chooses;

D.    Liquidated damages;

E.    Her costs and disbursements incurred herein;

F.    Her attorneys' fees; and

G.    For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

DATED: February 8, 2023.

**Law Offices of Daniel Snyder**

*/s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
      Attorneys for Plaintiff

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249