# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**ANGIE TOMLINSON**,

       Plaintiff,

  v.

**CITY OF PORTLAND**,

       Defendant.

Case No. 3:23-cv-188-SI

**OPINION AND ORDER**

Daniel J. Snyder, John D. Burgess, and Carl Lee Post, LAW OFFICES OF DANIEL SNYDER, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Trung D. Tru, Senior Deputy District Attorney, PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW Fourth Avenue, Suite 430, Portland, OR 90204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Angie Tomlinson brings this lawsuit against her former employer, the City of Portland (City). Plaintiff worked for the City's Bureau of Development Services (BDS) from April 2018 until she was terminated in November 2021. In her First Amended Complaint (FAC), Plaintiff asserts five claims for relief, including for disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 (ADA); disability discrimination in violation of Oregon disability law; interference with medical and family leave in violation of the Family and Medical Leave Act of 1993 (FMLA); interference with family and medical leave and retaliation in violation of the Oregon Family Leave Act of 1995 (OFLA); and discrimination on the basis of

PAGE 1 – OPINION AND ORDER

race and gender [1] in violation of Oregon disability law. Defendant moves to dismiss the FAC in

its entirety under Rules 12(b)(1)[2] and 12(b)(6) of the Federal Rules of Civil Procedure.[3] For the

reasons explained below, the Court grants in part Defendant's motion.

## STANDARDS

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules

of Civil Procedure may be granted only when there is no cognizable legal theory to support the

claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim

for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In

evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all

well-pleaded material facts alleged in the complaint and construe them in the light most

favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th

Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled

to a presumption of truth, allegations in a complaint "may not simply recite the elements of a

cause of action, but must contain sufficient allegations of underlying facts to give fair notice and

to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216

(9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in

---

[1] In the FAC, Plaintiff alleges that the City also discriminated against her because of her age, *see* FAC ¶ 2, but clarifies in her Response that she is not alleging discrimination on the basis of age and "amend[s] the references [to age discrimination] by interlineation," ECF 24 at 13.

[2] The City has moved the Court under Rule 12(b)(1) to dismiss Plaintiff's ADA claims for lack of subject matter jurisdiction on the ground that she failed to exhaust her administrative remedies. As discussed below, however, the ADA's administrative exhaustion requirement is nonjurisdictional. The Court therefore construes the City's motion to dismiss Plaintiff's ADA claims for failure to exhaust as one to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

[3] Defendant also moves in the alternative for a more definite statement under Rule 12(e). *See infra* note 28.

favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Plaintiff describes herself as "Hispanic of Mexican decent" and more than 50 years old. ECF 12 (FAC) ¶ 8. In April 2018, Plaintiff began working for BDS. FAC ¶ 10. Plaintiff worked within the BDS's "POPS Division," which was responsible for implementing the Portland Online Permitting System.[4] *Id.* Plaintiff worked as an Electronic Plan Review Manager and supervised the two other members of the "ePlans" team, which implemented software and processes enabling electronic applications for and approvals of municipal permits. FAC ¶¶ 10, 15, 17, 22, 33; *see also* POPS Program Fact Sheet, *supra* note 4. As an Electronic Plan Review

---

[4] Bureau of Development Services, POPS Program Fact Sheet (Dec. 26, 2018), https://www.portlandoregon.gov/bds/article/693983. The POPS Division is now known as the Permitting, Plan Review, and Inspections Technology System. City of Portland, Adopted Budget FY 2021-2022, Vol. 2, at 124, https://www.portlandoregon.gov/cbo/article/785597.

Manager, Plaintiff was classified as a "Principal Management Analyst," held the third highest position in the POPS Division, and was the only Latina within BDS that served as a manager. FAC ¶10.

## A. Plaintiff's Job Performance

Plaintiff alleges that she was effective at her job despite several challenges. FAC ¶¶ 16, 19, 22, 26, 41, 51. Those challenges included: having to work remotely because of the onset of the COVID-19 pandemic, FAC ¶ 22; short staffing, often due to sick or otherwise absent team members and managers, FAC ¶¶ 17, 26, 32, 37; and having to work with team members and managers who were ineffective, FAC ¶¶ 25, 43.

Plaintiff also alleges that throughout her employment, she worked 60-hour weeks without additional compensation—despite having repeatedly informed her supervisor, Brenda Fahey, about the uncompensated overtime. FAC ¶¶ 22, 26, 33, 37, 41, 42. After one weekend in May 2021, in which the three-member ePlans team implemented a major software upgrade and Plaintiff herself worked more than twenty-seven hours, Plaintiff was not offered any sort of compensation or leave for those worked hours. FAC ¶¶ 41. Plaintiff alleges, however, that the two other members of her team, one of whom she identifies as Caucasian, did receive overtime compensation. FAC ¶¶ 41, 59.

## B. Performance Improvement Plan and Disciplinary Suspension

In December 2020, Brenda Fahey (who at that time was the POPS Division Manager) placed Plaintiff on a "Performance Improvement Plan" (PIP) that would run from January 8, 2021 until mid-March 2021. FAC ¶ 28. On March 22nd, the PIP ended, and Ms. Fahey told

Plaintiff that the PIP had been completed. FAC ¶ 35.[5] Throughout the duration of the PIP,

Ms. Fahey provided Plaintiff with "only good feedback." FAC ¶ 35. On April 6th, however,

Ms. Fahey told Plaintiff that the PIP would be extended, and told Plaintiff—contrary to

Ms. Fahey's earlier representation—that Plaintiff had failed to complete the PIP. FAC ¶ 38. On

May 6th, Ms. Fahey informed Plaintiff that the extended PIP was ending and that Plaintiff would

be moved to "a disciplinary track." FAC ¶ 40.

In May 2021, Plaintiff participated in an "investigatory interview" with the POPS

Division Manager and a Bureau of Human Resources employee. FAC ¶¶ 44-45. According to

Plaintiff, "[t]he investigatory interview referenced [Human Resources Administrative

Rule] 5.01.1," which provides that "[i]ncompetence, inadequate performance[,] or

nonperformance of assigned duties" are "[c]ause for disciplinary action." FAC ¶ 44. Based on

the outcome of that interview, Plaintiff was informed on August 4, 2021 that she would receive a

five-day unpaid disciplinary suspension. FAC ¶ 48. Plaintiff had been scheduled to give an

important presentation to approximately 20 stakeholders later that day, and she gave the

presentation after being told of the disciplinary suspension. FAC ¶¶ 48, 56.

## C.  Promotion Denials and Failures to Reclassify

In January 2020, the BDS's Deputy Director opened a POPS Division Manager position.

FAC ¶ 20. Plaintiff was invited to be on the interview panel for the first round of interviews. *Id.*

Pricilla Limm, who Plaintiff describes as a Chinese-American woman, was chosen for the

position. *Id.*

---

[5] The FAC is not clear about the difference between the PIP "ending" (or "expiring") and
the PIP being "completed." *See, e.g.*, FAC ¶ 35, 38.

In November 2020, Ms. Fahey told Plaintiff that a new "Supervisor 2" position would be opening and that the person hired for the position would manage the ePlans team. FAC ¶ 27. In January 2021, Plaintiff applied and qualified for the position. FAC ¶ 29. Plaintiff was not interviewed for the position, however, because she was on a PIP, and the position remained unfilled. *Id.* In March 2021, Ms. Fahey reopened the position, and Plaintiff applied. FAC ¶ 36. Plaintiff again was not interviewed and another candidate was hired for the position. *Id.*

**D.  Job Reclassification Denials**

Plaintiff alleges that her job classification was incorrect and that her supervisors failed to correct the classification. According to Plaintiff, in December 2018 Defendant "reclassified Plaintiff downward into a Business Systems Analyst 3 (BSA3) classification," which was incorrect because Plaintiff had additional job duties not accounted for in that classification. FAC ¶ 13. That request for reclassification was denied. FAC ¶ 14. Plaintiff states that in Spring 2019 and in September 2020 she sought reclassification to "Supervisor 2," which involved the same pay scale as BSA3 but correctly reflected Plaintiff's job responsibilities. FAC ¶ 14, 26.[6]

**E.  Medical Leave**

Plaintiff states that in June 2021 (after the investigatory interview had taken place but before Plaintiff learned that she would be suspended) she sought and took medical leave "under FMLA/OFLA," which lasted from approximately June 2nd to June 23rd. FAC ¶ 46. On the day Plaintiff applied for leave, she told Ms. Fahey that she "was suffering from anxiety and stress because of what Fahey and [the] BDS Assistant Director . . . . were putting her through." *Id.* Plaintiff also informed Ms. Fahey that her doctor "had signed the FMLA certification of healthcare provider." *Id.* After returning from a three-week medical leave, she was "informed

---

[6] Plaintiff does not state whether that request for reclassification was granted.

that she could only work on one project, . . . and that nobody else on the ePlans team was allowed to work on the project with her." FAC ¶ 47.

On November 12, 2021, Plaintiff again applied for medical leave, including by submitting a "Certification of Healthcare Provider" form completed by her physician. FAC ¶ 53. Plaintiff was told that the Leave of Absence (LOA) paperwork required a signature from Plaintiff's manager, Ms. Fahey. *Id.* Even though Ms. Fahey was out of the office, Plaintiff was told that her request for medical leave would not be processed until Ms. Fahey signed the LOA form. *Id.* Plaintiff does not state when she was able to obtain Ms. Fahey's signature, although Plaintiff indicates that she submitted a completed application. *See* FAC ¶ 57.

After Plaintiff's employment was terminated, she received a letter from Ms. Fahey that stated: "Although you submitted FMLA paperwork shortly before the due process meeting held on November 15th, 2021, given the [BDS's] decision to terminate your employment there was no need to process your application further." *Id.*

**F.  Tort Claim Notice**

Plaintiff states on or about October 13, 2021, her attorney sent a tort claim notice to the City on her behalf, and that the City acknowledge receipt of the notice on October 20th. FAC ¶ 49. Plaintiff alleges that in November 2021, a City manager and supervisor told Plaintiff that he saw the tort claim notice and that it was being shared with other managers. FAC ¶ 52.

**G.  Termination**

Plaintiff alleges that on November 15, 2021, three days after she applied for additional leave, she was called into a meeting during which she was threatened with the termination of her employment. FAC ¶ 54. On November 22nd, Plaintiff was informed by telephone that her employment was being terminated as of that day. FAC ¶ 55. She then received a letter from the

City's human resources department stating that her employment was being terminated as a result of her performance during her August 4, 2021 presentation. FAC ¶ 56.

Plaintiff states that after the City terminated her employment, her job duties were initially performed by Anna Sposito, a white female, and then performed by a white male. FAC ¶ 59.

## DISCUSSION

### A.  Disability Discrimination, ADA

In Count One of Plaintiff's First Claim, Plaintiff alleges that she is a disabled person and that the City discriminated against her because of her disability in violation of the ADA. In Count Two of Plaintiff's First Claim, Plaintiff alleges that the City retaliated against her for pursuing her rights as a disabled person, in violation of the ADA.

Defendant seeks dismissal of both Counts on the ground that Plaintiff failed substantially to comply with the ADA's administrative exhaustion requirement. Plaintiff counters that she satisfied the exhaustion requirement because "the disability claims alleged in this lawsuit are based on incidents of discrimination included in the administrative charge or that are 'like or reasonably related to['] the allegations included in the administrative charge," or were "within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations" in the administrative charge. ECF 24 at 4-5 (first quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990); and then quoting *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003)).

### 1.  Legal Framework

#### a.  Disability Discrimination

Title I of the ADA prohibits public and private employers from discriminating against qualified individuals "on the basis of disability in regard to . . . the hiring, advancement, or

discharge of employees, employee compensation, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination under the ADA, the plaintiff must show that (1) she is a disabled person within the meaning of the statute; (2) she is a qualified individual with a disability; and (3) she suffered an adverse employment action because of that disability. *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001). Under the ADA, a person is "disabled" if that person has "a physical or mental impairment that substantially limits one or more of the individual's major life activities." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).[7] "An impairment covered under the ADA includes any physiological disorder," *id.*, and "major life activities" include "standing," "sitting," and "lifting," 29 C.F.R. § 1630.2(i)(1). "Substantially limited" means that a person is either "unable to perform the major life activity or [is] 'significantly restricted as to condition, manner or duration under which [she] can perform [the] particular major life activity.'" *Coons*, 383 F.3d at 885 (alternations added) (quoting 29 C.F.R. § 1630.2(j)).

### b.  Exhaustion Requirement

Title I expressly incorporates "[t]he powers, remedies, and procedures set forth in [Title VII of the Civil Rights Act of 1964]." 42 U.S.C. § 12117(a). Title VII directs that a complainant may commence a civil action against an allegedly offending employer only after filing a charge with the Equal Employment Opportunity Commission (EEOC). But when complaints concern a practice occurring in a state or political subdivision that has its own fair employment agency empowered "to grant or seek relief from such practice," Title VII requires the complainant to

---

[7] A person is also "disabled" under the ADA if that person "(2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Coons*, 383 F.3d at 884.

first file her charge with that state or local agency. 42 U.S.C. § 2000e–5(c); *see also Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019).[8] As is the case for a Title VII claim, before a complainant commences a civil action under Title I of the ADA, she similarly must exhaust her administrative remedies by filing a charge with EEOC or state or local agency. *See Zimmerman v. Or. Dep't of Just.*, 170 F.3d 1169, 1171 (9th Cir. 1999) (noting that Title I incorporates the charge-filing requirement from Title VII of the Civil Rights Act and that an employee cannot file suit before first filing a charge with the appropriate agency). Although the charge-filing requirement is a "nonjurisdictional claim-processing rule[]," the rule is "'mandatory' in the sense that a court must enforce the rule if a party properly raises it." *Fort Bend County*, 139 S. Ct. at 1849, 1852 (cleaned up).

A district court has jurisdiction over "any charges of discrimination that are like or reasonably related to the allegations made before the [agency], as well as charges that are within the scope of an [agency's] investigation that reasonably could be expected to grow out of the allegations." *Leong*, 347 F.3d at 1122 (quotation marks omitted). In making that determination, district courts must construe the administrative charge "with the utmost liberality." *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997) (quotation marks omitted). In determining whether a claim is "reasonably related," a court examines the text of the plaintiff's administrative charge and considers whether the plaintiff seeks to litigate a new theory of discrimination not previously presented through the appropriate administrative process. *See id.*;

---

[8] If the state has a "worksharing" agreement with EEOC, the complainant ordinarily need not file her charge with both the state agency and EEOC; the agency with which she files "will then relay the charge to the other." *Fort Bend County*, 139 S. Ct. at 1846 (citing 24 C.F.R. § 1601.13). In this case, Plaintiff filed her administrative charge with the Civil Rights Division at the Oregon Bureau of Labor & Industries, which sent the charge to EEOC. *See* ECF 19 (Tu Decl., Ex. 3) at 16 (EEOC Notice of Charge).

*see also, e.g.*, *Shah v. Mt. Zion Hosp. & Med. Ctr.*, 642 F.2d 268, 271-72 (9th Cir. 1981)

(refusing to consider additional claims for discrimination on the basis of race, color, and religion

when the plaintiff's EEOC complaint alleged discrimination only on the basis of sex and national

origin).

### 2.    Application

Plaintiff's administrative charge includes no reference to the ADA, nor does the body of

the charge reference—even obliquely—Plaintiff's purported status as a person with a qualifying

disability.[9] *See Hutton*, 273 F.3d at 891 (setting forth elements of ADA disability claim); *Coons*,

383 F.3d at 884 (addressing disability status under ADA). Even if Plaintiff's allegations in her

FAC were sufficient to survive a motion to dismiss her disability discrimination claims (which

they are not, for reasons explained below),[10] Plaintiff does not explain how her allegations in the

administrative charge are "like or reasonably related to" those allegations in the FAC, nor how

an administrative investigation based on the allegations in her administrative charge could

reasonably be expected to grow into an inquiry of disability discrimination.[11] *See Leong* 347

---

[9] The sole reference to disability is on the cover of the charge, which references several state-law claims, including disability discrimination and claims that Plaintiff does not bring in this suit (including age discrimination and whistleblower retaliation) and in support of which she alleges no facts, either in the charge or in the FAC.

[10] As discussed below, Plaintiff points to a single allegation in her FAC to support her assertion that she had a qualifying impairment of a major life activity: her statement to Ms. Fahey and Mr. Hathorne in a May 2021 meeting that she "had not been able to get enough sleep." ECF 24 at 10 (citing FAC ¶ 45). Setting aside the fact that the allegation is insufficient to sustain a disability discrimination claim under federal or state law, the allegation does not appear in the administrative charge.

[11] Although not dispositive in the analysis, *see Sosa*, 920 F.2d at 1456, the Court notes that the EEOC interpreted Plaintiff's administrative charge as involving claims alleged under only Title VII of the Civil Rights Act, and not the ADA, and understood the "circumstances of alleged discrimination" to include only "[s]ex," "[n]ational [o]rigin," and "[r]etaliation," but not "[d]isability," *see* ECF 19 (Tu Decl., Ex. 3) at 16 (EEOC Notice of Charge).

F.3d at 1122. Even construing Plaintiff's administrative charge "with utmost liberality," *id.*, it does not satisfy that standard.[12]

Accordingly, the Court dismisses Plaintiff's First Claim in its entirety.[13] Because Plaintiff cannot cure the deficiencies in her pleading through amendment, the Court dismisses Plaintiff's First Claim without leave to amend and with prejudice.

## B. Disability Discrimination, ORS Chapter 659A

In her Second Claim, Plaintiff alleges that the City discriminated against her because of her disability, failed to reasonably accommodate her disability, subjected her to disparate treatment, retaliated against her, and created a hostile work environment, all in violation of Oregon disability law, codified in Chapter 659A of the Oregon Revised Statutes (ORS).

---

[12] In her Response, Plaintiff states that her counsel had received a letter from the Bureau of Labor & Industries (BOLI) in a different case, involving a different client, purportedly stating that "any change containing direct disability medical terminology would be deemed unacceptable as federal filings and unable to be filed with the EEOC because the strict confidentiality of the charge cannot be guaranteed." ECF 24 at 4. In a declaration, Plaintiff's attorney attaches that letter, which is dated December 11, 2020. ECF 25 (Snyder Decl. Ex. C) at 7. The letter states that, due to "potential HIPPA [*sic*] violation exposure," "[EEOC] Charges having a specific disability on the Charge face are unacceptable as federal filings," and instructs Plaintiff's attorney to redraft a filed charge removing any "medical terminology and/or diagnosis."

It is unclear whether the letter instructs Plaintiff's attorney to remove the "direct disability medical terminology" only from the face of the charge or from the entire charge. Even assuming that the letter applies the entire charge filed in Plaintiff's case, the charge could have satisfied the applicable legal standard without Plaintiff including that purportedly prohibited information. *See Leong*, 347 F.3d at 1122.

[13] Even if Plaintiff had satisfied the ADA's exhaustion requirement, the Court would dismiss the entire First Claim for a second reason. As explained below, the FAC did not adequately state a claim for disability discrimination under Oregon law, and the same analysis applies to Plaintiff's ADA claim. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080,1087 (9th Cir. 2001); ORS § 659A.139 (providing that Oregon's antidiscrimination law "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended").

Defendant moves to dismiss that claim, arguing that Plaintiff has failed to state a *prima facie* case of employment discrimination under Oregon Law. According to Defendant, the FAC lacks allegations identifying Plaintiff's impairment or how that impairment substantially limits Plaintiff's major life activities, as required to assert a discrimination claim under ORS Chapter 659A.[14]

### 1. Legal Framework

ORS § 659A.112(1) makes it unlawful "for any employer to . . . discharge from employment or to discriminate in compensation or in terms, conditions[,] or privileges of employment on the basis of disability." An employer violates that provision by failing to "make reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." ORS § 659A.112(2)(e). An individual is "disabled" if she "has a physical or mental impairment that substantially limits one or more major life activities," has "a record of having a physical or mental impairment that substantially limits one or more major life activities," or if she "is regarded as having a physical or mental impairment that substantially limits one or more major life activities." ORS § 659A.104(1)(a)-(c).[15] Activities that are considered "major life activities" include "[c]aring for oneself," "[s]eeing," "[h]earing," "[s]tanding," and "[b]reathing," among others. ORS § 659A.104(2).

---

[14] Because the Court agrees with Defendant that Plaintiff's claim should be dismissed on those grounds, the Court does address Defendant's additional argument that Plaintiff has not alleged facts showing that she suffered an adverse employment action because of her disability.

[15] Employers need not provide a reasonable accommodation to individuals who only meet the "regarded as having" criterion. *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1232-33 (9th Cir. 2003) (construing ADA).

To establish a *prima facie* case of disability discrimination under Oregon law, the plaintiff must show: (1) she is a qualified individual with a disability; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and her disability. *Huitt v. Optum Health Servs.*, 216 F. Supp. 3d 1179, 1187 (D. Or. 2016). The ADA[16] "treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)).

**2. Application**

To survive a motion to dismiss, Plaintiff must allege well-pleaded facts demonstrating the existence of a "physical or mental impairment that substantially limits one or more major life activities." *See* ORS § 659A.104.(1)-(2). In her FAC, Plaintiff alleges that she "is a 'disabled person' as defined at ORS § 659A.104(1)." FAC ¶74. That bare assertion, however, is not a well-pleaded factual allegation: it is a legal conclusion, which the Court need not credit. *See Iqbal*, 556 U.S. at 678-79.

Plaintiff asserts that she has alleged facts showing that she has a qualifying disability because "[p]aragraph 45 [of] Plaintiff's Amended Complaint detail [*sic*] that Plaintiff's sleeping was impaired, and she disclosed that to Ms. Fahey and Mr. Hathorne on May 26, 2021." ECF 24 at 10. Paragraph 45 of the FAC states:

> On May 26, 2021, Plaintiff was subjected to an Investigatory Interview by Brenda Fahey and [Human Resources Business

---

[16] As noted, Oregon's antidiscrimination law "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended." ORS § 659A.139.

> Partner] Hathorne. During that interview, Brenda Fahey asked
> about the feedback loop for software "go-live" issues with
> supervisors and managers. Plaintiff responded that it had only
> been 1.5 weeks since the software go-live, and that Plaintiff had
> been sick since the go-live and had not been able to get enough
> sleep.

Plaintiff's statement that she had "not been able to get enough sleep" during a brief period when she was ill falls short of a well-pleaded allegation of a qualifying disability under Oregon law. *Cf. Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (concluding that the plaintiff's "temporary psychological impairment, from December 19, 1992 to April 5, 1993, with no residual effects after April 5, 1993, was not of sufficient duration to fall within the protections of the ADA as a disability"); *see also id.* (noting that "[s]everal courts have held that a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA" and collecting cases); *Wilmarth v. City of Santa Rosa*, 945 F. Supp. 1271, 1276 (N.D. Cal. 1996) ("Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." (construing ADA)). The referenced discussion also would not have placed Defendant on notice of a need to accommodate any purported disability of Plaintiff. *See* ORS § 659A.112(2)(e) (disability discrimination includes a failure to "make reasonable accommodation to the *known* physical or mental limitations of a qualified individual with a disability" (emphasis added)).

Plaintiff also alleges that she "requested reasonable accommodations from the City." Plaintiff, however, fails to allege any facts about when she requested an accommodation or what accommodation she requested. Because Plaintiff has failed to allege facts sufficient to state a claim for discrimination under Oregon Law, the Court dismisses Claim Two without prejudice.[17]

---

[17] To the extent that Plaintiff seeks to assert claims under Oregon law under theories of retaliation, disparate treatment, or hostile work environment, the Court agrees with Defendant

## C.  FMLA and OFLA

In her Third Claim, Plaintiff argues that Defendant "interfered with Plaintiff for engaging in the protected activity of taking medical and family leave," in violation of FMLA. In her Fourth Claim, Plaintiff argues that Defendant "interfered, discriminated, and retaliated against [her]" in violation of the Oregon Family Leave Act (OFLA). In support of her FMLA and OFLA claims, Plaintiff alleges two adverse actions: first, that shortly after Plaintiff returned from leave in June 2021, her working conditions changed in that she was permitted to work only on one project and no one else on her team was permitted to work with her; second, that she was terminated from employment less than two weeks after seeking FMLA/OFLA leave.[18]

Defendant argues that Plaintiff has failed to state a claim for violations of either FMLA or OFLA. According to Defendant, the FAC does not contain factual allegations to demonstrate: (1) "that Plaintiff was eligible or qualified for the protections of FMLA/OFLA"; (2) that Plaintiff "had an actual medical condition that made her entitled to take leave"; (3) "the causal connection

_____

that it is not clear from the FAC which of the specific actions alleged in paragraphs 10 through 59 of the FAC Plaintiff considers relevant to each theory. If Plaintiff files a second amended complaint, she must comply with Rule 8(a) of the Federal Rules of Civil Procedure. *See, e.g.*, *Thompson v. Quality Loan Svc. Corp.*, 2023 WL 3614386, at *2 (N.D. Cal. Mar. 27, 2023) (finding that complaint violated Rule 8 in part because the complaint failed to make clear "which facts relate to which claims"); *Alvarez v. Adams*, 2007 WL 113998, at *1 (E.D. Cal. Jan. 10, 2007) (explaining that "[i]t is not the Court's responsibility" to determine "which facts go with which claims").

[18] Plaintiff states that the adverse employment actions taken against her include "but [are] not limited to" those two actions. The Court cannot identify any additional adverse actions alleged in the FAC that would support Plaintiff's FMLA and OFLA claims.

between Plaintiff taking FMLA/OFLA leave and the adverse employment actions she complains about."[19]

Courts must construe OFLA "to the extent possible in a manner that is consistent with any similar provisions of [FMLA]." ORS § 659A.186(2); *see also Sanders v. City of Newport*, 657 F.3d 772, 783 (9th Cir. 2011) ("Consistent with this legislative declared intent, the Oregon courts have looked to federal law when interpreting OFLA"); *id.* ("In light of these similar statutory and regulatory provisions, the district court properly applied the same legal standards under FMLA to [the plaintiff's] OFLA claim."); *Benz v. West Linn Paper Co.*, 803 F. Supp. 2d 1231, 1250 (D. Or. 2011) (noting Oregon courts look to federal law when interpreting OFLA). The Court therefore considers Plaintiff's FMLA and OFLA claims together.

### 1.  Legal Framework

Under 29 U.S.C. § 2612(a), eligible employees are entitled to a total of 12 weeks of leave during any 12-month period for several enumerated reasons, including when a "serious health condition . . . makes the employee unable to perform the functions of the position of [the] employee." 29 U.S.C. § 2612(a)(1)(D); *see also* ORS §§ 659A.159(1) (OFLA analogue to § 2612(a), also providing twelve weeks of protected leave).[20] FMLA creates "two interrelated substantive rights": first, the employee's "right to use a certain amount of leave for protected reasons," and second, the "right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). FMLA

---

[19] Defendant also argues that Plaintiff has not explained "why it matters that the City purportedly denied her request for medical leave <u>after</u> her employment was terminated." The Court agrees with Defendant and thus does not further consider that denial of leave.

[20] Leave taken under OFLA "must be taken concurrently with, and not in addition to" leave taken under FMLA if an employee qualifies for leave under both FMLA and OFLA. ORS § 659A.186(2).

makes it unlawful for any covered employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an eligible employee's right to protected FMLA leave. 29 U.S.C. § 2615(a); *see also* ORS § 659A.183 (OFLA analogue making it unlawful for a covered employer to "[d]eny family leave to which an eligible employee is entitled" and to "[r]etaliate or in any way discriminate against an individual with respect to . . . any . . . term or condition of employment" for taking an action protected under OFLA, including taking leave).

### a.  FMLA Interference

The Ninth Circuit has recognized two theories for a violation of § 2612(a): the "interference" or "entitlement" theory, and the "retaliation" or "discrimination" theory. *Olson v. United States ex rel. Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020). The two theories are often confused because of the "unfortunate intermixing of the two different statutory concepts" in the governing FMLA provisions.[21] *Bachelder*, 259 F.3d at 1124; *see also Hanson v. Or. Legis. Assembly*, 2023 WL 22196, at *21 (D. Or. Jan. 3, 2023) (clarifying which FMLA provisions govern which theories of recovery).

As relevant here, the Ninth Circuit has clarified that a claim that an employer has "visit[ed] negative consequences" on an employee for using FMLA leave is an "interference" claim under § 2615(a)(1). *Bachelder*, 259 F.3d at 1124; *see also Ramirez v. Wynn Las Vegas,*

---

[21] This distinction between the theories has practical consequences because the standards for FMLA retaliation and FMLA interference claims are different. *See Bachelder*, 259 F.3d at 1131 ("[T]here is no room for a *McDonnell Douglas* type of pretext analysis when evaluating an 'interference' claim under [FMLA]."); *Schultz v. Wells Fargo Bank, Nat. Ass'n*, 970 F. Supp. 2d 1039, 1058 (D. Or. 2013) (noting that "although undecided in the Ninth Circuit, other circuits and courts in this district have adopted the *McDonnell Douglas* burden shifting framework when analyzing FMLA retaliation claims" and collecting cases (footnote omitted)); *see also Alcozar-Murphy v. Asarco LLC*, 744 F. App'x 411, 412 (9th Cir. 2018) (affirming, without analysis, a district court's application of the burden-shifting framework to an FMLA retaliation claim).

*LLC*, 2022 WL 3715751, at *6 (D. Nev. Aug. 29, 2022) ("Though Ramirez's complaint uses the

terms 'retaliation' and 'discrimination,' her claim is properly construed as an FMLA interference

claim because she alleges Wynn terminated her for taking FMLA leave."). "Interference" may

also include interfering with an employee's right to take FMLA leave by terminating that

employee, thereby making it impossible for the employee to take leave to which she would have

been entitled had she remained employed. *See, e.g.*, *Fulfer v. WinCo Holdings, Inc.*, 2019

WL 5536326, at *33 (E.D. Cal. Oct. 25, 2019). Plaintiff properly characterizes her claim as one

for interference under FMLA: she alleges that Defendant visited negative consequences on her

because she took FMLA leave and that Defendant terminated her after she sought to take

additional FMLA leave. *See Bachelder*, 259 F.3d at 1124.

### b. OFLA Retaliation and Discrimination

As stated, Plaintiff brings claims under OFLA for "interference, discrimination, and

retaliation." OFLA provides:

> It is an unlawful practice for a covered employer to:
>
> (1) Deny family leave to which an eligible employee is entitled under ORS 659A.150 to 659A.186; or
>
> (2) Retaliate or in any way discriminate against an individual with respect to hire or tenure or any other term or condition of employment because the individual has inquired about the provisions of ORS 659A.150 to 659A.186, submitted a request for family leave or invoked any provision of ORS 659A.150 to 659A.186.

ORS § 659A.183. Thus, OFLA expressly includes in its text that visiting negative consequences

on an employee for taking or trying to take OFLA leave is "retaliation" or "discrimination" (in

contrast to FMLA, under which such violations would be brought under a theory of

"interference"). The Oregon Court of Appeals has held that employees may bring "an action for

retaliation under OFLA" when an employer "retaliate[s] against an employee for inquiring about

OFLA leave, submitting a request for OFLA leave, or in any way invoking the provisions of OFLA." *Yeager v. Providence Health Sys. Or.*, 195 Or. App. 134, 138-39 (2004).[22]

As noted, Plaintiff's brings her OFLA claim for "interference, discrimination, and retaliation." Because ORS § 659A.183 does not use the term "interference," the Court understands Plaintiff to bring a claim for retaliation or discrimination under ORS § 659A.183(2), based on the two alleged adverse actions discussed above.[23] Because an OFLA retaliation or discrimination claim is analogous to an FMLA interference claim, the Court evaluates Plaintiff's FMLA and OFLA claims together, under the same standard. *See Bachelder*, 259 F.3d at 1124; *Sanders*, 657 F.3d at 783.

### 2. Application

#### a. Whether Plaintiff Was Entitled to Take Protected Leave

As discussed, Defendant asserts that the FAC does not contain factual allegations showing that Plaintiff "was eligible or qualified for the protections of FMLA/OFLA" or that Plaintiff had "an actual medical condition that made her entitled to take leave pursuant to FMLA/OFLA." Although Plaintiff does not specify the nature of her "serious medical condition," she states that she received an FMLA "Certification of Healthcare Provider" before seeking and taking leave in June 2021 and before applying for leave in November 2021. Under

---

[22] The court in *Yeager* relied on *former* ORS § 659A.001(12) (2001) and a broad rule promulgated by the BOLI Commissioner, Or. Admin. Code § 839-009-0320(3) (2002)) (("It is an unlawful employment practice for an employer to retaliate or in any way discriminate against any person with respect to hiring, tenure or any other term or condition of employment because the person has inquired about OFLA leave, submitted a request for OFLA leave or invoked any provision of [OFLA].")). After the decision in *Yeager*, OFLA was amended to incorporate the BOLI rule and the holding in *Yeager*.

[23] It is possible that Plaintiff intends to assert that Defendant's termination of Plaintiff in November 2021 "interfered" with Plaintiff taking the leave for which she had just applied.

FMLA, an employer may require that a request for leave based on the employee's own "serious health condition" be supported by "a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a); *see also* ORS § 659A.168(1) (providing that "a covered employer may require medical verification from a health care provider of the need for the leave" if the purpose of the leave is for the purpose of recovering from or seeking treatment for the employee's own serious health condition under ORS § 659A.159(1)(c)). Such certification is considered sufficient if it states details of the employee's health condition, including the date of onset and the probable duration of the condition, and states that "the employee is unable to perform the functions of [her] position." 29 U.S.C. § 2613(b).

Plaintiff's allegation that she received healthcare provider certifications is sufficient to show at this stage that she had a qualifying medical condition that entitled her to take leave under FMLA and OFLA. And the fact that she did, in fact, take leave is sufficient to show that she was otherwise eligible or qualified for the protections of FMLA and OFLA. Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's Third and Fourth Claims on this ground.

### b. Causation

As discussed, Defendant also argues Plaintiff has not alleged facts showing the causal connection between Plaintiff taking FMLA/OFLA leave and the adverse actions she alleges. As stated, Plaintiff identifies two adverse actions: a change in her working conditions upon returning from leave, and termination from employment less than two weeks after again seeking leave. The Court finds that those alleged adverse actions are sufficient for Plaintiff to survive a motion to dismiss her claim for interference under FMLA and OFLA. *See, e.g.*, *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003) (holding that a "very close" temporal proximity "between an employer's knowledge of protected activity and an adverse employment action" is sufficient circumstantial evidence of causation (quotation marks omitted)); *Villiarimo v. Aloha*

*Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (similar); *Shultz v. Wells Fargo Bank, Nat'l Ass'n*, 970 F. Supp. 2d 1039, 1055 (D. Or. 2013) (similar); *Meyer v. State ex rel. Or. Lottery*, 292 Or. App. 647, 683 (2018) (holding that a "gap of one to two months between the claimed protected activity and the subsequent adverse action . . . is sufficient to raise an issue of fact on causation"); *cf. Magee v. Trader Joe's Co.*, 2020 WL 9550008, at *11 (D. Or. Sept. 1, 2020) (focusing on a five-week temporal proximity between an employee's accommodation request and the imposition of administrative leave, explaining that "[a] reasonable employee being immediately placed on unpaid leave for a period of three weeks after seeking accommodations could be dissuaded from seeking accommodations"), *report and recommendation adopted in relevant part*, 2021 WL 1550336, at *1-2 (D. Or. Apr. 20, 2021).

**D.  Race and Gender Discrimination, ORS § 659A.030**

  In her Fifth Claim, Plaintiff alleges that the City discriminated against her based on her race and gender in violation of Oregon disability law, specifically ORS § 659A.030.[24] Defendant moves to dismiss that claim on the ground that the FAC lacks sufficient factual allegations to support a claim for race and gender discrimination.

  Plaintiff argues that she has alleged facts sufficient to show that the City engaged in discrimination because "similarly situated individuals, who were not members of Plaintiff's protected classes (gender and racial minority), were either not subjected to the same expectations

---

[24] Under ORS § 659A.030(1)(b), it is unlawful "[f]or an employer, because of an individual's race, . . . sex, . . . [or] national origin, . . . to discriminate against the individual in compensation or in terms, conditions or privileges of employment."

of working hours, or were given additional compensation for comparable work." ECF 24 at 13.[25]

In support, Plaintiff cites a single paragraph of the FAC, which states:

> From May 14 through 17, 2021, the ePlans team of Anna Sposito, Melissa Linehan, and Plaintiff, implemented a major software upgrade. It required all three team members to work over-time over the weekend. Although Plaintiff worked twenty-seven hours over that weekend, Plaintiff was never offered any sort of compensation or leave for time over that weekend, but the other two members of the team did receive compensation.

FAC ¶ 41. Elsewhere in the FAC, Plaintiff identifies Ms. Sposito as "a white female." FAC ¶ 59. Plaintiff does not identify the race or gender of Melissa Linehan.

Plaintiff has pointed to no facts suggesting discrimination based on gender. Nor is the alleged isolated incident involving a failure to compensate Plaintiff or to offer her leave after she worked long hours over a weekend sufficient to state a claim for race discrimination.[26] *See, e.g.*, *Nichol v. City of Springfield*, 2017 WL 6028465, at *15 (D. Or. Dec. 3, 2017) (explaining that "'isolated incidents (unless extremely serious)' are insufficient to support a claim of gender discrimination" (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008)).[27]

---

[25] The Court construes Plaintiff's claim as one for discrimination based on disparate treatment. To establish a *prima facie* case for discrimination based on disparate treatment, an employee must show that the employer treated the employee differently in the terms or conditions of work because of the employee's membership in a protected class. *See Gibson v. Douglas County*, 197 Or. App. 204, 218 (2005); *see also Garcez v. Freightliner Corp.*, 188 Or. App. 397, 406 (2003) (setting forth elements of a *prima facie* case of discrimination that is based on circumstantial evidence).

[26] Plaintiff also does not respond to Defendant's argument that Plaintiff was not entitled to any overtime compensation because, according to her own allegations, she was a manager and a supervisor.

[27] Plaintiff also alleges that after she was terminated, "a white female, and then a white male" "replaced" Plaintiff by taking over her job duties. Even considering those allegations together with those discussed above, Plaintiff has not stated facts sufficient to support a claim for race or gender discrimination.

Accordingly, the Court dismisses Plaintiff's Fifth Claim, with leave to amend if Plaintiff can cure the defects identified in this Opinion and Order.[28]

## CONCLUSION

The Court GRANTS IN PART Defendant's Motion to Dismiss and for a More Definite Statement (ECF 18). The Court DISMISSES Plaintiff's First Claim, without leave to amend, and DISMISSES Plaintiff's Second and Fifth Claims with leave to amend. The Court declines to dismiss Plaintiff's Third and Fourth Claims. Plaintiff may file a second amended complaint within two weeks from the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 25th day of January, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[28] Defendant has also moved in the alternative for a more definite statement under Rule 12(e), which allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." The Court finds that the FAC states with sufficient clarity Plaintiff's claims brought under FMLA and OFLA. In addition, because the Court grants Defendant's motion to dismiss Plaintiff's other claims under Rule 12(b)(6), Defendant's alternative motion for a more definite statement is moot as to those claims. If Plaintiff choses to file a second amended complaint, she should be mindful of the deficiencies in the FAC as identified in this Opinion.