IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANGIE TOMLINSON**, | Case No. 3:23-cv-188-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF PORTLAND**, | |
| Defendant. | |

Daniel J. Snyder and Paul Bastian, LAW OFFICES OF DANIEL SNYDER, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Trung D. Tu, Senior Deputy District Attorney, PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW Fourth Avenue, Suite 430, Portland, OR 90204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Angie Tomlinson (Plaintiff) brings this lawsuit against her former employer, the City of Portland (Defendant, or the City). Plaintiff worked for the City's Bureau of Development Services (BDS) from April 2018 until the City terminated her employment in November 2021. In her Second Amended Complaint (SAC), Plaintiff asserts four claims: disability discrimination in violation of Oregon disability law, Or. Rev. Stat. (ORS) § 659A.103 *et seq.* (First Claim); interference with protected leave in violation of the federal Family and Medical Leave Act (Second Claim); interference with family and medical leave and retaliation for taking medical

PAGE 1 – OPINION AND ORDER

leave in violation of the Oregon Family Leave Act (Third Claim); and race and gender discrimination in violation of ORS § 659A.030 (Fourth Claim). Defendant moves to dismiss Plaintiff's First and Fourth Claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons stated below, the Court grants in part Defendant's motion.

## STANDARDS

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

---

[1] After considering the record in this case, the Court concludes that oral argument would not be helpful in deciding Defendant's motion. *See* LR 7-1(d)(1).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Plaintiff describes herself as Hispanic of Mexican descent. ECF 31 (SAC) ¶ 8. She alleges that she suffers from an anxiety disorder, "which substantially impairs the major life activities of sleeping, thinking, and working."[2] SAC ¶ 41. In April 2018, Plaintiff began working for BDS. SAC ¶ 10. Plaintiff worked within the BDS's "POPS Division," which was responsible for implementing the Portland Online Permitting System.[3] *Id.* Plaintiff worked as an Electronic Plan Review Manager and supervised the two other members of the "ePlans" team, which implemented software and processes enabling electronic applications for and approvals of municipal permits. SAC ¶¶ 10, 15, 22; *see also* POPS Program Fact Sheet, *supra* note 3. As an

---

[2] Plaintiff does not provide a specific date of onset or diagnosis, although she alleges that in Spring 2021 she informed her supervisor that she suffered from an anxiety disorder. SAC ¶ 42.

[3] Bureau of Development Services, POPS Program Fact Sheet (Dec. 26, 2018), https://www.portlandoregon.gov/bds/article/693983. The POPS Division is now known as the Permitting, Plan Review, and Inspections Technology System. City of Portland, Adopted Budget FY 2021-2022, Vol. 2, at 124, https://www.portlandoregon.gov/cbo/article/785597.

Electronic Plan Review Manager, Plaintiff was classified as a "Principal Management Analyst," held the third highest position in the POPS Division, and was the only Latina within BDS that served as a manager. SAC ¶ 10.

A. **Plaintiff's Job Performance**

Plaintiff alleges that she was "effective" at her job, despite several challenges. SAC ¶¶ 15, 19, 22, 26, 43, 53. Those challenges included: having to work remotely because of the onset of the COVID-19 pandemic, SAC ¶ 22; short staffing, often due to sick or otherwise absent team members and managers, SAC ¶¶ 17, 26, 32, 37; and having to work with team members and managers who lacked technical expertise or were otherwise ineffective, SAC ¶¶ 15, 25, 45. In October 2021, Plaintiff completed, in record time, a project that she had worked on independently, and she received positive comments from reviewers who used Plaintiff's work product. SAC ¶¶ 49, 53.

Plaintiff also alleges that throughout her employment, she worked 60-hour weeks without additional compensation—despite having repeatedly informed her supervisor, Brenda Fahey, about the uncompensated overtime. SAC ¶¶ 22, 26, 33, 37, 43, 44. In April 2021, Plaintiff told Ms. Fahey that there were too many expectations on the ePlans team for the team to be successful, and that there were not enough people working on the team to successfully complete the work. SAC ¶ 37. After one weekend in May 2021, in which the three-member ePlans team implemented a major software upgrade and Plaintiff herself worked more than 27 hours, Plaintiff was not offered any additional compensation or leave. SAC ¶ 43. Plaintiff alleges, however, that the two other members of her team, both of whom are white, did receive overtime compensation. *Id.*

B. **Performance Improvement Plan**

In December 2020, Ms. Fahey (who at that time was the POPS Division Manager) placed Plaintiff on a "Performance Improvement Plan" (PIP) that would run from January 8, 2021 until mid-March 2021. SAC ¶ 28. Plaintiff alleges that the imposition of PIP was unwarranted. SAC ¶ 104. On March 22nd, the PIP ended, and Ms. Fahey told Plaintiff that the PIP had been completed. SAC ¶ 35.[4] Plaintiff alleges that throughout the duration of the PIP, Ms. Fahey provided Plaintiff with "only good feedback." *Id.* On April 6th, however, Ms. Fahey told Plaintiff that the PIP would be extended, and also told Plaintiff—contrary to Ms. Fahey's earlier representation—that Plaintiff had failed to complete the PIP. SAC ¶ 38. On May 6th, Ms. Fahey informed Plaintiff that the extended PIP was ending and that Plaintiff would be moved to "a disciplinary track." SAC ¶ 40. Plaintiff states that to the best of her knowledge, "no similarly situated white or male employees were put on [PIPs] after performing their assigned work in a satisfactory manner," nor did any such employees have PIPs extended after receiving only positive feedback. SAC ¶ 38.

C. **Request to Accommodate**

Plaintiff alleges that in Spring 2021, at some point after she was placed on the PIP but before she was suspended, she had a discussion with Brenda Fahey about the staffing on the ePlans team and the number of hours that the team members were working to satisfy Fahey's expectations about the project. SAC ¶ 42. According to Plaintiff, she told Fahey that she suffered from an anxiety disorder and asked Fahey to accommodate her anxiety disorder by adding additional team members. *Id.*

---

[4] The SAC does not explain the difference between the PIP "ending" (or "expiring") and the PIP being "completed." *See, e.g.*, SAC ¶ 35, 38.

### D. Disciplinary Suspension

In May 2021, Plaintiff participated in an "investigatory interview" with the POPS Division Manager and a Bureau of Human Resources employee. SAC ¶¶ 46-47. According to Plaintiff, "[t]he investigatory interview referenced [Human Resources Administrative Rule] 5.01.1," which provides that "[i]ncompetence, inadequate performance[,] or nonperformance of assigned duties" are "[c]ause for disciplinary action." SAC ¶ 46. During the interview, Ms. Fahey asked about issues related to a software implementation project on which Plaintiff had worked; Plaintiff responded that it had only been one and a half weeks since the "go-live" and that Plaintiff "had been sick since the go-live and had not been able to get enough sleep." SAC ¶ 47. Based on the outcome of that interview, Plaintiff was informed on August 4, 2021 that she would receive a five-day unpaid disciplinary suspension. SAC ¶ 50.

Plaintiff had been scheduled to give an important presentation to about 20 stakeholders later that day, and she gave the presentation after being told of the disciplinary suspension. SAC ¶¶ 50, 58. According to Plaintiff, learning about the suspension caused her to experience symptoms of her anxiety disorder, "which led to a negative impression of her performance in the presentation." SAC ¶ 50.

### E. Promotion Denials and Failures to Reclassify

In January 2020, BDS's Deputy Director opened a POPS Division Manager position. SAC ¶ 20. Plaintiff was invited to be on the interview panel for the first round of interviews. *Id.* Pricilla Limm, who Plaintiff describes as a Chinese-American woman, was chosen for the position. SAC ¶ 22.

In November 2020, Ms. Fahey told Plaintiff that a new "Supervisor 2" position would be opening and that the person hired for the position would manage the ePlans team. SAC ¶ 27. In January 2021, Plaintiff applied and qualified for the position. SAC ¶ 29. Plaintiff was not

interviewed for the position, however, because she was on a PIP, and the position remained unfilled. *Id.* In March 2021, Ms. Fahey reopened the position, and Plaintiff applied. SAC ¶ 36. Plaintiff again was not interviewed and another candidate was hired for the position. *Id.*[5]

### F. Job Reclassification Denials

Plaintiff alleges that her job classification was incorrect and that her supervisors failed to correct the classification. According to Plaintiff, in December 2018 Defendant "reclassified Plaintiff downward into a Business Systems Analyst 3 (BSA3) classification," which, Plaintiff alleges, was incorrect because Plaintiff had additional job duties not accounted for in that classification. SAC ¶ 13. Plaintiff states that in Spring 2019 and in September 2020 she sought reclassification to "Supervisor 2," which involved the same pay scale as BSA3 but correctly reflected Plaintiff's job responsibilities. SAC ¶ 14, 26.[6]

### G. Medical Leave

Plaintiff states that in June 2021 (after the investigatory interview had taken place but before Plaintiff learned that she would be suspended), she sought and took medical leave "under FMLA/OFLA," which lasted from approximately June 2nd to June 23rd. SAC ¶ 48. On the day Plaintiff applied for leave, she told Ms. Fahey that she "was suffering from anxiety and stress because of what Fahey and BDS Assistant Director Elshad Hajiyev were putting her through." *Id.* Plaintiff also informed Ms. Fahey that her doctor "had signed the FMLA certification of healthcare provider." *Id.* After returning from a three-week medical leave, Plaintiff was

---

[5] It is unclear from the SAC whether Plaintiff was still on a PIP during the interview and hiring process. According to Plaintiff, the PIP initially ended on March 22, 2021, but Fahey told Plaintiff on April 6, 2021 that Fahey would be "extending" the PIP. *See* SAC ¶¶ 35, 38.

[6] Plaintiff alleges that her Spring 2019 request for reclassification was denied, *see* SAC ¶ 14, but does not state the outcome of her September 2020 request.

PAGE 7 – OPINION AND ORDER

"informed that she could only work on one project, . . . and that nobody else on the ePlans team was allowed to work on the project with her." SAC ¶ 49.

On November 12, 2021, Plaintiff again applied for medical leave, including by submitting a "Certification of Healthcare Provider" form completed by her physician. SAC ¶ 55. Plaintiff was told that the Leave of Absence (LOA) paperwork required a signature from Plaintiff's manager, Ms. Fahey. *Id.* Even though Ms. Fahey was out of the office, Plaintiff was told that her request for medical leave would not be processed until Ms. Fahey signed the LOA form. *Id.* Plaintiff does not state when she was able to obtain Ms. Fahey's signature, although Plaintiff's allegations indicate that she submitted a completed application, presumably with Ms Fahey's signature. *See* SAC ¶ 59.

After Plaintiff's employment was terminated, she received a letter from Ms. Fahey stating: "Although you submitted FMLA paperwork shortly before the due process meeting held on November 15th, 2021, given [BDS's] decision to terminate your employment there was no need to process your application further." *Id.*

**H.  Termination**

Plaintiff alleges that on November 15, 2021, three days after she applied for additional medical leave, she was called into a meeting during which she was threatened with the termination of her employment. SAC ¶ 56. On November 22nd, Plaintiff was informed by telephone that her employment was being terminated as of that day. SAC ¶ 57. She then received a letter from the City's human resources department stating that her employment was being terminated as a result of her performance during her August 4, 2021 presentation. SAC ¶ 58. Plaintiff adds that after the City terminated her employment, her job duties were initially performed by Anna Sposito, a white female, and then performed by a white male. SAC ¶ 61.

**DISCUSSION**

A.  **Plaintiff's First Claim**

In her First Claim, Plaintiff alleges violations of Oregon employment discrimination law, ORS § 659A.103 *et seq.*, under theories of: (1) discrimination based on actual disability; (2) failure to accommodate; (3) disparate treatment; and (4) retaliation.[7] Defendant moves to dismiss the First Claim in its entirety on the grounds that Plaintiff has not sufficiently alleged that she has a qualifying disability.[8]

1.  **Legal Framework**

Oregon law makes it unlawful "for any employer to . . . discharge from employment or to discriminate in compensation or in terms, conditions[,] or privileges of employment on the basis of disability." ORS § 659A.112(1). An individual has a "disability" if the individual "has a physical or mental impairment that substantially limits one or more major life activities of the individual." ORS § 659A.104(1)(a). Activities that are considered "major life activities" include

---

[7] Plaintiff also alleges discrimination under Oregon disability law under a theory of "hostile work environment" but does not identify any provision of ORS Chapter 659A that would support that theory. As explained below, Plaintiff has not alleged facts sufficient to show that she is an individual with a disability for purposes of Oregon employment discrimination law. Even assuming that a claim of "hostile work environment" is available under ORS Chapter 659A *and* that Plaintiff need not show that she is an individual with a disability to prevail on that claim, Plaintiff does not respond to Defendant's argument that the SAC contains no allegations to support that claim. Plaintiff, therefore, has forfeited this argument. *See, e.g.*, *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond amounts to a concession."); *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210, 1210 n.7 (N.D. Cal. 2013) (so holding and collecting cases holding that a party concedes an argument by failing to respond to it).

[8] Defendant moves for dismissal of Plaintiff's First Claim on additional grounds, including that Plaintiff is not a "qualified individual" for purposes of Oregon disability law; the SAC fails to state a claim for a failure to reasonably accommodate; and the SAC contains no allegations to support Plaintiff's claim of discrimination based on a theory of retaliation. Because Plaintiff has not alleged facts sufficient to show that she is a person with a disability, the Court declines to reach these additional arguments.

sleeping, thinking, and working, among others. ORS § 659A.104(2)(f), (p), (r). Under ORS § 659A.104(3), a plaintiff bringing a claim of discrimination based on disability must not only show that she has a physical impairment that limits a major life activity, but also must show that the impairment "restricts one or more major life activities of the individual as compared to most people in the general population." ORS § 659A.104(3). Nonetheless, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 436 (9th Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(i), (ii)) (discussing requirements of the Americans with Disabilities Act of 1990 (ADA)[9]).

A specific standard applies when a plaintiff claims that she is substantially limited in the major life activity of working. Prior to enactment of the ADA Amendments Act of 2008 (ADAAA), the ADA regulations promulgated by the Equal Opportunity Employment Commission (EEOC) expressly provided that the inability to work a single, particular job did not constitute a substantial limitation in the major life activity of working. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999) (citing *former* 29 C.F.R. § 1630(j)(3)(i)), *superseded in part by the ADAAA as recognized in Nunies*, 908 F.3d at 434 n.3. Thus, under EEOC's pre-ADAAA regulations, a plaintiff asserting that she was substantially limited in the major life activity of working needed to show that she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills[,] and abilities." *Id.* (quoting *former* 29 C.F.R. § 1630.2(j)(3)(i)). Relying on the EEOC regulations that were effect *before* 2008, the Supreme

---

[9] Oregon's antidiscrimination law "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act." ORS § 659A.139.

Court in *Sutton* explained that "the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Id.*

After the Supreme Court decided *Sutton*, the EEOC removed from its regulations the provisions discussing the major life activity of working. *See* "Substantially Limited in Working," Appendix to Part 1630–Interpretive Guidance on Title I of the Americans with Disabilities Act, 76 Fed. Reg. 16978-01 (Mar. 25, 2011) (now codified at 29 C.F.R. pt. 1630, app. (2016) [hereinafter "EEOC Interpretive Guidance"]) (discussing the 2011 amendments to EEOC regulations). Importantly, however, the EEOC has since affirmed, in its guidance, the "broad class of jobs" requirement that the Supreme Court articulated in *Sutton*:

> In the rare cases where an individual has a need to demonstrate that an impairment substantially limits him or her in working, the individual can do so by showing that the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities. . . .
>
> . . . . .
>
> Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working.

EEOC Interpretive Guidance, *supra*. Regulations promulgated by Oregon's Bureau of Labor and Industries impose the same standard for a plaintiff who alleges a substantial limitation in the major life activity of working:

> To be substantially limited in the major life activity of working, an individual must be significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the ability of an average person with comparable skill, experience, education[,] or other job-related requirements needed to perform those same positions[.]

OAR 839-006-0205(6)(w).

**2. Application**

Plaintiff's allegations regarding her disability are insufficient to show that she is an individual with a disability for purposes of Oregon discrimination law. Plaintiff alleges that her anxiety disorder "substantially impairs the major life activities of sleeping, thinking, and working." Plaintiff, however, does not allege specific facts showing how her anxiety disorder impairs her ability to sleep or think. Plaintiff's allegations are therefore insufficient to show a substantial limitation in either of those activities. *See Iqbal*, 556 U.S. at 678 (explaining that courts need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"); *Shaw-Owens v. The Bd. of Trs. of Cal. State Univ.*, 2013 WL 4758225, *2 (N.D. Cal. Sept. 4, 2013) (granting motion to dismiss when the plaintiff alleged only that she had "serious health conditions which substantially impaired [her] major life functions, including but not limited to work"); *Klamut v. Cal. Highway Patrol*, 2015 WL 9024479, at *7 (N.D. Cal. Dec. 16, 2015) ("Where, as here, a plaintiff's allegations do not illuminate the nature, severity, duration[,] and impact of the plaintiff's disability, such allegations are insufficient to suggest that the plaintiff is substantially impaired by the purported disability." (cleaned up)).

As for Plaintiff's statement that her anxiety disorder impairs the major life activity of working, her allegations, taken as true and considered together, are insufficient to show that her anxiety disorder substantially limits her ability to work under the applicable standard. Plaintiff alleges that even after the onset of her anxiety disorder, she was effective at her job despite several challenges and obstacles having nothing to do with her alleged impairment. Other than Plaintiff's presentation to stakeholders in August 2021 (discussed below), to the extent that Plaintiff's supervisors found her job performance deficient, Plaintiff does not specifically allege that her *disability* caused any deficient performance. Rather, she alleges, *e.g.*, that her

PAGE 12 – OPINION AND ORDER

supervisor's expectations for the ePlans team were excessive; the ePlans team's work product suffered because it was understaffed; and at one point Plaintiff "had been sick . . . and not been able to get enough sleep."

Plaintiff also alleges that in June 2021, she took protected leave for about three weeks[10] but adds that she did so because she was suffering "anxiety and stress *because of what Fahey and . . . Hajiyev were putting her through*." SAC ¶ 48 (emphasis added). According to Plaintiff, her managers subjected her to months of unfair treatment, including but not limited to: the imposition of a PIP that was unwarranted and then extended even though Plaintiff's work had been satisfactory; unfounded criticism; refusal to properly classify Plaintiff's position; and overwork, including routine 60-hour workweeks without overtime compensation.[11] When considered together, Plaintiff's allegations show only, at most, that she was unable to perform her job duties because of anxiety and stress caused by her managers' continuing mismanagement and mistreatment of Plaintiff. Those specific actions taken by Plaintiff's managers are not inherent or typical of a "class of jobs" or a "broad range of jobs." *See* EEOC Interpretive Guidance, *supra*; OAR 839-006-0205(6)(w). Thus, although Plaintiff has alleged that her managers' actions triggered symptoms of her anxiety disorder, which in turn impaired her ability to work, Plaintiff's allegations do not show that she was substantially limited in the major life activity of working under the applicable standard—namely, that she was "significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the ability of an average person with comparable skill, experience, education[,] or other job-

---

[10] Plaintiff also alleges that around a month before her employment was terminated she applied for leave, but she does not allege the basis for seeking that leave.

[11] As discussed below, Plaintiff plausibly alleges that some of these actions constituted discrimination based on race.

PAGE 13 – OPINION AND ORDER

related requirements needed to perform those same positions." *See* OAR 839-006-0205(6)(w); *see also* EEOC Interpretive Guidance, *supra* ("Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working."); *cf. Green v. City & County of San Francisco*, 2021 WL 3810243 (N.D. Cal. Aug. 26, 2021) ("[Plaintiff] has clamored loudly that he would have been able to work for someone—anyone—else at the City and, for this very reason, the City should have transferred him. But such a restriction is not a recognized disability under the relevant statute. Thus, . . . [Plaintiff] has presented no competent evidence that he was actually disabled[.]"), *aff'd*, 2023 WL 7211421 (9th Cir. Nov. 2, 2023).

Plaintiff's only other allegation about a limitation on her ability to work that was specifically caused by her alleged impairment involves her response to learning that she would receive a five-day unpaid disciplinary suspension. According to Plaintiff, learning of the suspension caused her to experience symptoms of her anxiety disorder, leading to a negative impression of her performance in giving an important presentation that same day. That allegation regarding a specific instance of impaired job performance is not enough plausibly to show that Plaintiff's anxiety disorder substantially limited her ability to "to perform a class of jobs or a broad range of jobs in various classes as compared to the ability of an average person." *See* OAR 839-006-0205.

In sum, Plaintiff's allegations, when taken as true and considered together, are insufficient to show that she was substantially limited in her ability to engage in the major life activity of working or any other major life activity. Plaintiff therefore has failed to show that she had a qualifying disability during her employment with the City. Accordingly, the Court

dismisses Plaintiff's First Claim, alleging disability discrimination in violation of Oregon disability law.

## B. Plaintiff's Fourth Claim

In her Fourth Claim, Plaintiff alleges race and gender discrimination in violation of ORS § 659A.030. Under ORS § 659A.030(1)(b), it is unlawful "[f]or an employer, because of an individual's race . . . [or] sex . . . , to discriminate against the individual in compensation or in terms, conditions[,] or privileges of employment."

Defendant moves for dismissal of the Fourth Claim on the ground that Plaintiff has failed to allege facts sufficient to support her claims of race and gender discrimination. Plaintiff responds that the allegations in paragraphs 38 and 104 of the SAC are sufficient to show "that discipline was applied differently to Plaintiff on the basis of sex or race." In paragraph 38, Plaintiff alleges that "[t]o Plaintiff's best knowledge, no similarly situated white or male employees were put on Performance Improvement Plans after performing their assigned work in a satisfactory manner," and that "[n]o similarly situated white or male employees had Performance Improvement Plans extended after only receiving positive feedback."

In paragraph 104, Plaintiff alleges that "Defendant applied discipline in a disproportionate manner than applied [*sic*] to employees who were not members of Plaintiff's protected classes," including by "the imposition of an unwarranted Performance Improvement Plan." In addition, regarding race discrimination, Plaintiff alleges that after the three members of the ePlans team worked overtime in May 2021, she was not offered any overtime compensation, while the other two members of the team, who were white, did receive compensation. Plaintiff also alleges that after she was terminated from employment, she was replaced by two white employees.

Standing alone, Plaintiff's allegations about the unwarranted imposition and extension of a PIP are insufficient to state a claim for gender discrimination under ORS § 659A.030. *See Nichol v. City of Springfield*, 2017 WL 6028465, at *15 (D. Or. Dec. 3, 2017) (explaining that "'isolated incidents (unless extremely serious)' are insufficient to support a claim of gender discrimination" (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008)); *see also Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (explaining that at the motion to dismiss stage, a court cannot accept conclusory allegations or unwarranted inferences). To overcome a motion to dismiss, it is not enough for a plaintiff to allege facts that merely show, as Plaintiff allegations do here regarding gender discrimination, "a sheer possibility that [Defendant] has acted unlawfully." *See Mashiri*, 845 F.3d at 988 (quoting *Iqbal*). Accordingly, the Court dismisses Plaintiff's Fourth Claim as to gender discrimination in violation of ORS § 659A.030.

As to Plaintiff's claim of race discrimination, however, Plaintiff has alleged more than an isolated incident of discrimination. Plaintiff alleges that, unlike white employees, she was subject to unwarranted discipline; unlike the two other members of the ePlans team, who were white, Plaintiff did not receive compensation for working overtime; and after Plaintiff was terminated from employment, she was replaced by two white employees. Those allegations, taken together, are sufficient to state a claim for race discrimination. Accordingly, the Court declines to dismiss Plaintiff's Fourth Claim as to race discrimination in violation of ORS § 659A.030.

## CONCLUSION

The Court GRANTS IN PART Defendant's Motion to Dismiss (ECF 34). The Court DISMISSES Plaintiff's First Claim, alleging disability discrimination in violation of Oregon disability law. As to Plaintiff's Fourth Claim, for gender and race discrimination in violation of

ORS § 659A.030, the Court DISMISSES Plaintiff's Fourth Claim as to gender discrimination but declines to dismiss Plaintiff's Fourth Claim as to race discrimination.

**IT IS SO ORDERED**.

DATED this 24th day of July, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 17 – OPINION AND ORDER